

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

August 23, 1948

Hon. J. S. Holleman　　　　　Opinion No. V-664
District Attorney
Montgomery County　　　　　Re: Eligibility of Indians
Conroe, Texas　　　　　　　　　to vote without paying
　　　　　　　　　　　　　　　　poll tax.

Dear Sir:

　　　　We refer to your letters and inquiry by telephone in which you submit the following:

　　　　"Can Indian citizens of the State of Texas, between the ages of 21 and 60 years of age, vote without paying a poll tax?

　　　　"The Indians under consideration live on the Indian Reservation located in Polk County, Texas. It is my understanding that they are supported by both the State and the Federal Government."

　　　　The Southwestern Historical Quarterly, Volume 36, page 83, et seq., in the Archives Division of the State Library, contains a comprehensive history of the Indians in Polk County, from which we gather the following:

　　　　Near the Big Thicket in Polk County, Texas, lives a small remnant of the Alibimu and Koasattis Indians--commonly known as Alabamas and Coshattis. The two tribes are related. Shortly before the battle of San Jacinto the Alabamas moved into Louisiana as the army and people were fleeing eastward. The Coshattis remained in their village on the Trinity. The Alabamas returned to their village after the war was over. Neither the Alabamas nor Coshattis took any part in the war. p. 92.

　　　　In 1840 the Texas Congress granted two leagues of land on the Trinity to each of the tribes, all of which was taken from them by white settlers. The Indians became landless and homeless wanderers. p. 95.

After the annexation of Texas, although the United States assumed responsibility for the Indians within the State, these bands of Alabamas and Coshattis remained under the protection of the State government.  p. 96.

Evidenced by a deed recorded in Book D, pages 432-3, Deed Records of Polk County, Texas, the State purchased 1280 acres of land in Polk County in 1854, which was conveyed to the Indians tax free and inalienable.  Three hundred and thirty Alabama Indians were settled on the land in 1854 and 1855.  p. 98.  About ten Coshattis settled in Polk County.  The remainder of the tribe was scattered around Polk and Liberty Counties, disorganized and broken in spirit.  The whole number of that tribe in Texas at that time did not exceed 80.  p. 100.  The 1930 census shows 230 Indians then in Polk County.

In 1928 the United States purchased 3071 acres of land in Polk County adjoining their original reserve to be held in trust for the Alabama Indians of Texas. Vol. 88, page 209, Deed Records, Polk County.

The United States undertook to pay $2000.00 per year for the schooling of said Indians.  The foregoing poses the question as to what constitutes an "Indian Reservation".  It is common knowledge that "Indian Reservations" are areas which were reserved to Indians in treaties between the United States and the Indian tribes.  The United States did not own any land in Texas to "reserve" for Indian tribes.

April 29, 1846, the Legislature of Texas adopted a concurrent resolution which reads in part:

"We recognize no title in the Indian Tribes resident within the limits of the State to any portion of the soil thereof; and we recognize no right in the government of the United States to make any treaty of limits with the Indian tribes."

Prior to June 16, 1906, Indian Territory and Oklahoma Territory existed as territories of the United States without status as states.  On that date said territories were consolidated as a single unit in the name of Oklahoma and by that name admitted to statehood.

With the exception of the small remnant of the Alabamas and Coshattis, the Texas Indians were moved to the lands reserved for them in said territories and in New Mexico, which was also such a territory at the time the Indians were placed in Reservations by the United States.

We are informed by the State Department of Education that the Alabama and Coshatti Indians have availed themselves of the Texas school laws and organized Indian Independent School District in Polk County; they enumerated 113 scholastics for the presently ensuing school term. $6215.00 of the State available school fund was apportioned to the district. $1.80 per capita of the 113 scholastics is applied to school administration in Polk County.

The Alabama and Coshatti Indians in Polk County were all born in Polk County, Texas.

Section 1 of Article VI of the Texas Constitution enumerates the classes of persons who are prohibited from voting in elections in Texas. Indians are not prohibited.

Section 2 of said Article VI of the Texas Constitution specifies classes who may vote. The pertinent part of it reads:

"Every person subject to none of the foregoing disqualifications, who shall have attained the age of twenty-one years and who shall be a citizen of the United States and who shall have resided in this State one year next preceding an election and the last six months within the district or county in which such person offers to vote, shall be deemed a qualified elector; . . . and provided further, that any voter who is subject to pay a poll tax under the laws of the State of Texas shall have paid said tax before offering to vote at any election in this State and hold a receipt showing that said poll tax was paid before the first day of February next preceding such election . . . And this provision of the Constitution shall be self-enacting without the necessity of further legislation." (Emphasis added)

In Totus v. United States 39 Fed. Supp. 7 (1941) 70 members of an Indian tribe questioned the right of the government to enforce Selective Training Service against them on the ground that they were not citizens of the United States.  In that regard, the Court said:

"Any doubt which might have existed concerning the citizenship of Indians or members of Indian tribes in this country was set at rest by the adoption of the Nationality Code of 1940.  That act provided, 8 U.S.C.A. § 601:

"'The following shall be nationals and citizens of the United States at birth: * * *

"'(b)  A person born in the United States to a member of an Indian, Eskimo, Aleutian, or other aboriginal tribe:  Provided, that the granting of citizenship under this subsection shall not in any manner impair or otherwise affect the right of such person to tribal or other property.'

"The main controversy as to the citizenship status of Indians arose out of the opinion of the Supreme Court of the United States in the case Elk v. Wilkins, 112 U.S. 94, 5 S. Ct. 41, 43, 28 L. Ed. 643, decided November 3, 1884.  It was there held that a person born in the United States to members of an Indian Tribe had not acquired citizenship of the United States at birth not having been born 'subject to the jurisdiction thereof,' within the meaning of the Fourteenth Amendment.  Since that time the Congress passed six Acts conferring citizenship upon Indians.  The Act of June 2, 1924, 43 Stat. 253, 8 U.S.C.A. § 3, was the last of these and it provided:  'All non-citizen Indians born within the territorial limits of the United States be, and they are hereby, declared to be citizens of the United States.'

"Since this act did not purport to change the Tribal relationship of Indians in the United States, it was not clear that it was applicable to citizens born after its passage and fear was expressed that it was limited to non-citizen Indians born within the territorial limits of the United States who were living on the effective date of the act and who by it were made citizens of the United States. The Congressional purpose of subsection (b) was to make clear that such persons are born citizens of the United States." (Emphasis added)

In Regan v. King, 49 Fed. Supp. 222, it was held that a child born in the United States of alien parentage is a citizen of the United States. On appeal the Circuit Court sustained the decision and in 134 Federal Reporter, 2nd, 413 said:

"On the authority of the Fourteenth Amendment to the Constitution, § 1, making all persons born in the United States citizens thereof, as interpreted by the Supreme Court of the United States in United States v. Wong Kim Ark, 169 U. S. 649, 18 S. Ct. 456, 42 L. Ed. 890, and a long line of decisions, including the recent decision in Perkins, Secretary of Labor et al. v. Elg., 307 U.S. 325, 59 S. Ct., 884, 83 L. Ed. 1320, the judgment of dismissal, 49 F. Supp. 222, is affirmed." Certiorari was denied of the U. S. Supreme Court.

We are of the opinion that the Alabama and Coshatti Indians in Polk County are citizens of the United States and residents of the State of Texas within the meaning of Section 2 of Article VI of the State Constitution. We find nothing in the assistance given them by the State or Federal Government which renders them "paupers" or otherwise disqualified to vote.

The next question is whether such Indians between 21 and 60 are exempt from paying poll taxes on account of Article 2959, V.C.S., the pertinent portion of which reads as follows:

"A poll tax shall be collected from
every person between the ages of twenty-
one (21) and sixty (60) years who resided
in this State on the first day of January
preceding its levy, Indians not taxed,
persons insane, blind, deaf or dumb, those
who have lost a hand or foot, those perm-
anently disabled, and all disabled veterans
of foreign wars, where such disability is
forty (40%) per cent or more, excepted. .
. . ."

The term "Indians not taxed" was defined by the
United States Supreme Court in Elk v. Wilkins, 112 U. S.
94 where it said:

"Indians and their property, exempt
from taxation by treaty or statute of the
United States, could not be taxed by any
State."

In a dissenting opinion in that case it is
said:

"This is apparent from that clause
of article I, section 3, which requires,
in the apportionment of representatives
and direct taxes among the several States
'according to their respective numbers,'
the exclusion of 'Indians not taxed.'
This implies that there were at that time,
in the United States, Indians who were
taxed, that is, were subject to taxation
by the laws of the State of which they
were residents. Indians not taxed were
those who held tribal relations and,
therefore, were not subject to the auth-
ority of any State and were subject only
to the authority of the United States
under the power conferred upon Congress
in reference to Indian Tribes in this
country. The same provision is preserved
in the 14th Amendment; for, now, as at
the adoption of the Constitution, Indians
in the several States, who are taxed by
their laws, are counted in establishing
the basis of representation in Congress."
(Emphasis added)

Obviously, if it were intended by Article 2959 to exempt all Indians from the payment of a poll tax in Texas, the exception would have provided "Indians excepted," rather than "Indians not taxed, excepted."

Recognizing, therefore, as we must, that the term "Indians not taxed" historically signifies a classification of Indians which does not now exist, and specially so in Texas, it is apparent that the use of that term in Articles 7046 and 2959 is now meaningless, regardless of whether such Indians are within or without a tribal reservation. Secs. 1, 2, Art. VI, Texas Const. Arts. 2954, 2955, 2960, V. C. S.

In view of the foregoing we are of the opinion that the Alabama and Coshatti Indians in Polk County are eligible voters in Texas to the same extent as members of any other race. Those between the ages of 21 and 60 who do not come within other general exemptions must have paid poll taxes the same as other voters.

## SUMMARY

Alabama and Coshatti Indians are eligible voters in elections in Texas to the same extent as members of any other race.

Those between 21 and 60 and not otherwise exempt from the poll tax must have paid the same as required of other voters.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By W. T. Williams
Assistant

WTW:wb

APPROVED:

Price Daniel
ATTORNEY GENERAL